## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**KATI MARIE MAYER**                                                    **PLAINTIFF**

**v.**                                                    **Civil No. 2:25-cv-58-HSO-BWR**

**OAK GROVE HIGH SCHOOL;**
**LAMAR COUNTY SCHOOL**
**DISTRICT; LAMAR COUNTY**
**SCHOOL DISTRICT BOARD OF**
**TRUSTEES; and JOHN DOES 1-10**                         **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS OAK GROVE HIGH SCHOOL AND LAMAR COUNTY SCHOOL DISTRICT BOARD OF TRUSTEES' MOTION [9] FOR JUDGMENT ON THE PLEADINGS

Defendants Oak Grove High School and Lamar County School District Board of Trustees ("Defendants") seek judgment on the pleadings under Federal Rule of Civil Procedure 12(c),[1] on grounds that Oak Grove High School and the Lamar County School District Board of Trustees have no separate legal identity apart from Defendant Lamar County School District. *See* Mot. [9]; Mem. [10].  In the context of this case, Defendants' Motion [9] should be granted.  Plaintiff Kati Marie Mayer's claims against Defendants Oak Grove High School and Lamar County School District Board of Trustees, as well as the claims against Defendants John Does 1-10, should be dismissed without prejudice.

---

[1] Both parties incorrectly cite to the Mississippi Rules of Civil Procedure rather than the Federal Rules.  *See* Mot. [9] at 1; Mem. [10] at 1; Mem. [12] at 1; Reply [14] at 1.

I. <u>BACKGROUND</u>

Plaintiff Kati Marie Mayer ("Plaintiff" or "Mayer") alleges that in August 2023, she was employed as an inclusion teacher at Oak Grove High School ("OGHS") in Hattiesburg, Mississippi, where she was assigned to Peggy Sumrall's ("Sumrall") classroom.  Compl. [1] at 3.  She claims that Sumrall approached her and "explained her sex life involving her husband, herself, and another woman," *id.*, and that because the other woman "now had a boyfriend," Sumrall asked Plaintiff to "join her and her husband," *id.*  Sumrall repeatedly inquired about Plaintiff's interest in this arrangement, *id.* at 3-4, and Plaintiff believes that when she reported Sumrall's behavior, she was subjected to adverse treatment and denied protection, *id.*

Plaintiff asserts that she reported Sumrall's conduct to Mrs. Michelle Sisson ("Sisson"), the 10th-Grade Administrator, in August 2023, but Sisson took no action. *Id.* at 4.  Meanwhile, Sumrall's harassment continued, including an incident in September 2023, where Sumrall overheard Plaintiff discussing plans to purchase a lake house and remarked, "[g]reat, if you get a boat then I can come over in my bikini and hang out with you." *Id.*  Plaintiff maintains that she sent "several" emails to the school principals expressing her discomfort over these incidents. *Id.*

On March 1, 2024, Plaintiff sent a "follow-up email" to Mike Moulder ("Moulder"), the 9th-Grade Disciplinary Administrator, expressing her discomfort with working with Sumrall, *id.*, and describing Sumrall's continued advances, including "grab[bing] her hand"; "hang[ing] on her"; and "winking at [her]," *id.*

Moulder "responded with a plan to move [Plaintiff]" to a different teacher's classroom, *id.*, but on March 4, 2024, Moulder informed Plaintiff that she could no longer switch classrooms, and instead "instructed [her] not to physically" enter Sumrall's classroom but continue working with her, *id.* at 5.

Plaintiff emailed Helen Price ("Price"), "the lead principal," that same day, detailing her situation and asking to meet. *Id.* Plaintiff claims that she met with Price that afternoon, *id.*, and Price told her that Sumrall had been informed that Plaintiff would be moving classrooms due to an administrative change, *id.* at 6. Plaintiff alleges that Sumrall remained undeterred and appeared unannounced at her home on March 18, 2024. *Id.* Plaintiff reported this conduct, but the District took no action. *Id.* On April 15, 2025, Plaintiff met with Mrs. Rainwater ("Rainwater"), the Director of Human Resources, and Dr. Gray ("Gray"), the Assistant Superintendent. *Id.* She asserts that despite having full knowledge of the situation, Defendants "failed to take any corrective action," and "failed" to protect her from further sexual harassment. *Id.* at 7.

Plaintiff filed suit in this Court against Defendants Oak Grove High School, Lamar County School District, the Lamar County School District Board of Trustees ("the Board"), and John Does 1-10. Compl. [1] at 1. The Complaint [1] advances claims against all Defendants for violations of: (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., *id.* at 8; (2) the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112(b)(5) and 12203(a); and (3) § 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794(a), (d), *id.* at 9.

Defendants' present Motion [9] argues that the Court "must dismiss the Lamar County School District Board of Trustees" as a defendant because "it is not an entity capable of being sued," Mem. [10] at 3, and that it "must also dismiss Oak Grove High School as it cannot be sued," *id.* at 5.  Simply put, Defendants believe that Oak Grove High School and the Lamar County School District Board of Trustees are not political subdivisions under Mississippi law and possess no separate legal identity apart from the School District, rendering them not amenable to suit.  *Id.* (citing Miss. Code Ann. § 37-6-7 and Miss. Code Ann. § 11-46-1(i)). Plaintiff opposes the Motion [9].

## II. <u>DISCUSSION</u>

A.    <u>Standard of Review</u>

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the pleadings have closed.  *See* Fed. R. Civ. P. 12(c).  "The Rule 12(c) standard for judgment on the pleadings is the same as the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6)."  *Chaudhary v. Arthur J. Gallagher & Co.*, 832 F. App'x 829, 832 (5th Cir. 2020) (per curiam) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

B.    <u>Claims Against the Lamar County School District Board of Trustees</u>

Defendants argue that the Lamar County School District Board of Trustees is not amenable to suit, Mem. [10] at 3, because the Board is "merely a 'governing authority' for the proper political subdivision," and not a political subdivision itself, *id.* at 4 (quoting Miss. Att'y Gen. Op. No. 2000-25, 2000 WL 297620, at *1 (Miss. A.G. Feb 4, 2000)).  Defendants' position is that Mississippi law "only named school districts as political subdivisions," Reply [14] at 2, so the Board has no "legal autonomy" separate from the School District, *id.* at 4.  Plaintiff counters that the Board is a corporate body with the capacity to be sued, Mem. [12] at 2, and that the State has implicitly authorized suit against school boards under Mississippi Code § 37-7-301 because it empowers school boards to enter into contracts and employ legal counsel, *id.*

The capacity of the Board to be sued is determined according to state law. Fed. R. Civ. P. 17(b)(3); *Darby v. Pasadena Police Dept.*, 939 F.2d 311, 313 (5th Cir. 1991).  To be properly named as a defendant in Mississippi, a party must be a separate legal entity known as a "political subdivision."  *See Meiger v. Pearl River Cnty.*, 986 So. 2d 1025, 1026-27 (Miss. Ct. App. 2008); *Bd. of Alderen of Tutwiler v. State*, 371 So. 3d 190, 191-92 (Miss. Ct. App. 2023).  The Mississippi Tort Claims Act ("MTCA") defines a political subdivision as:

Any body politic or body corporate other than the state responsible for governmental activities only in geographic areas smaller than that of

the state, including, but not limited to, any county, municipality, school district, charter school, volunteer fire department that is a chartered nonprofit corporation providing emergency services under contract with a county or municipality, community hospital as defined in Section 41-13-10, airport authority, or other instrumentality of the state, whether or not the body or instrumentality has the authority to levy taxes or to sue or be sued in its own name.

Miss. Code Ann. § 11-46-1(i).  Mississippi Code § 37-6-5 also explicitly lists school districts as political subdivisions.  *See* Miss. Code Ann. § 37-6-5 ("Each school district in the state shall be a political subdivision. . .").  These statutes are silent about the Board's status, and normally statutory silence would end the Court's inquiry.  This is because in Mississippi, when a court interprets a statute, its "role begins and ends with the statutory text, which is the alpha and the omega of the interpretative process."  *Pitts v. State*, 405 So. 3d 1238, 1245 (Miss. 2025) (citation omitted); *see also Weatherly v. Pershing, L.L.C.*, 945 F.3d 915, 921 (5th Cir. 2019) ("When a statute controls, our first stop (and usually our last) is the statutory text.").

Plaintiff argues that the Mississippi Supreme Court, however, has referenced a school board's status in some of its decisions.  *See Harrison Cnty. v. Gulfport*, 557 So. 2d 780, 789 (Miss. 1990) ("As a general rule, a School District, *School Board*, or other local school organization is a separate legal entity, and is entirely separate and distinct from a *city or town*.") (emphasis added; citation omitted); *Smith v. Dorsey*, 599 So. 2d 529, 544 (Miss. 1991) ("As a 'political subdivision,' a *school board* is an agency of the State and has a separate and distinct identity from the *city or county* in which it is located. . .") (emphasis added) (citing *Frazier v. State By and Through Pittman*, 504 So. 2d 675, 699 (Miss. 1987) and *Harrison Cnty.*, 557 So. 2d

6

at 789)); *Shipman v. N. Panola Sch. Dist.*, 641 So. 2d 1106, 1119 (Miss. 1994) (noting that a special election concerning the issuance of school bonds, which was run by the school board, was subject to the federal Voting Rights Act, which only applies to political subdivisions).  And in interpreting Mississippi law, the Fifth Circuit has stated that "the Mississippi legislature's definition of 'political subdivision' includes school districts and *school boards*."  *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 597 (5th Cir. 2006) (citing Miss. Code Ann. § 11-46-1(i)) (emphasis added).

The context in which the Mississippi Supreme Court made these foregoing statements involved cases in which it was distinguishing school boards and districts from towns or cities.  *See Harrison Cnty.*, 557 So. 2d at 789; *Smith*, 599 So. 2d at 544.  But in the context of this case, the presence of both the Board and District as defendants is duplicative and redundant, and the cases cited by Plaintiff appear to confirm this.  For instance, in *Grenada Municipal Separate School District v. Jesco, Inc.*, the Mississippi Supreme Court analyzed a contract dispute between a school district and a construction company for the "construct[ion] [of] a school building." 449 So. 2d 226, 226 (Miss. 1984).  The Mississippi Supreme Court first noted that *school boards* are "granted the power, authority, and duty 'to have responsibility for the erection . . . of school facilities.'"  *Id.* at 227 (quoting Miss. Code Ann. § 37-7-301)).  It then noted that the *school district* is "authorized to file and pursue" breach of contract claims because it

> would be against public policy to authorize the separate *school district as a subdivision of the State*, to enter into a specific contract to spend

7

the district taxpayer's money to build a school, and leave the contracting party without the right to enforce its terms.

*Id.* (emphasis added).

This indicates that school districts and school boards act in concert—the districts through the boards, *see also Floyd*, 400 So. 3d at 384 n.1, which supports the conclusion that here, the Board and District share a legal identity, in that the Board serves as the governing body of the District. Intuitively, this approach makes sense. Mississippi law is clear that school districts are governed by a school board, Miss. Code Ann. § 37-6-7, that school boards are charged with promulgating and enforcing school policy and rules, Miss. Code Ann. § 37-7-301(l), paying district debts, Miss. Code Ann. § 37-7-301(tt), and constructing new school buildings and repairing existing ones, Miss. Code Ann. § 37-7-301(k). Mississippi law is also clear that school districts are political subdivisions that can sue and be sued, Miss. Code Ann. § 37-6-5, and case law, including that cited by Plaintiff, indicates that school districts operate through school boards to enforce rights, *Grenada*, 449 So. 2d at 226-27 (noting that the school district had the right to enter into a contract and sue for beach of contract regarding the construction of a new school, but that the school board had the statutory power to construct the school); *Shipman*, 641 So. 2d at 1008 (resolving a suit against the school district for action taken by the school board). Thus, while both school boards and school districts appear as defendants in some cases, *see, e.g., Davis v. Biloxi Pub. Sch. Dist.,* 937 So. 2d 459, 459 (Miss. Ct. App. 2005), based upon the statutory responsibilities afforded the Board and the absence of textual support to the contrary, the presence of both in this case is redundant and

8

unnecessary.  Because the claims against the Board in this case are redundant of those against the District, the Board should be dismissed.

C.     Claims Against Oak Grove High School

Defendants maintain that Oak Grove High School is also not amenable to suit.  Mem. [10] at 5.  Plaintiff counters that under Title VII and the ADA, OGHS is a proper defendant because it was "act[ing] as the District's agent," Mem. [12] at 4, and "[n]umerous courts permit employees to name an individual school, campus, or division as an agent-employer under Title VII for injunctive or equitable relief," *id*. Plaintiff also argues that because she seeks "relief and policy changes at OGHS," and "OGHS administers day-to-day operations," it is a necessary party for relief under Federal Rule of Civil Procedure 19.  *Id*.

The capacity of OGHS to be sued is determined according to state law.  Fed. R. Civ. P. 17(b)(3); *Darby*, 939 F.2d at 313.  Mississippi Code § 37-6-5 recognizes that school districts are political subdivisions, and political subdivisions are amenable to suit.  *See Harrison Cnty.*, 557 So. 2d at 789; *Black*, 461 F.3d at 597. But high schools are not explicitly recognized as political subdivisions, *see* Miss. Code Ann. § 37-6-5; Miss. Code Ann. § 11-46-1(i), and Mississippi law is clear on this point.

High schools do not govern their own affairs.  *See* Miss. Code Ann. §§ 37-6-5, 37-7-301(a), (l).  Instead, the Legislature confers upon school boards the authority and duty to "organize and operate the schools of the district," Miss. Code Ann. § 37-7-301(a), and "[t]o prescribe and enforce rules and regulations not inconsistent with

law," Miss. Code Ann. § 37-7-301(l).  Because OGHS does not possess the authority

to govern its own affairs, it is merely a component of the School District and lacks a

separate legal identity, rendering it not amenable to suit.  *See Hamm v. Saltillo*

*High School*, Civil No. 1:14-cv-192-SA-DAS, 2015 WL 9275163, at *2 (N.D. Miss.

Dec. 18, 2015) ("[T]he Mississippi Code does not recognize [Saltillo High School] as a

political subdivision and does not vest it with the authority to govern its own

affairs.").

Plaintiff nevertheless insists that OGHS is an agent of the School District,

Mem. [12] at 4, and that "[n]umerous courts permit employees to name an

individual school, campus, or division as an agent-employer under Title VII for

injunctive or equitable relief," *id.*  Plaintiff does not cite a single case to support her

position, and in similar Title VII cases, the named defendants are overwhelmingly

school districts, not individual schools.  *See, e.g.*, *Harper v. City of Jackson*

*Municipal Sch. Dist.*, 149 F. App'x 295, 299 (5th Cir. 2005) ("If [Plaintiff] could show

that she suffered a tangible employment action by Casher, her supervisor, then the

*School District* would be vicariously liable.") (emphasis added), *aff'g Harper v. City*

*of Jackson Mun. Sch. Dist.*, 414 F. Supp. 2d 595 (S.D. Miss. 2005); *Griffin v.*

*Starkville Oktibbeha Cnty. Sch. Dist.*, No. 1:23-CV-54-SA-DAS, 2024 U.S. Dist.

LEXIS 157737, at *1-2 (N.D. Miss. Sept. 3, 2024) (suing the school district for

supervisor sexual harassment); *Stringer v. Mound Bayou Pub. Sch. Dist.*, No. 4:14-

CV-92-DMB-JMV, 2016 WL 183701, at *1 (N.D. Miss. Jan. 14, 2016) (stating that

the employment discrimination suit was against "her former employer, Mound Bayou Public School District").

Plaintiff also argues that because she seeks "relief and policy changes at OGHS," and "OGHS administers day-to-day operations, its joinder is needed to effectuate any forward-looking relief." Mem. [12] at 4. This is incorrect. The statute's plain language provides that "school boards . . . shall have the . . . power [t]o prescribe and enforce rules and regulations . . . for their government and for the government of the schools," Miss. Code Ann. § 37-7-301(l), and that "[i]t shall be the duty of each superintendent, principal and teacher in the public schools of this state . . . to observe and enforce the statutes, rules and regulations prescribed for the operation of schools," Miss. Code Ann. § 37-9-69. Mississippi law is clear: the school board—not the high school—controls policy, and the Board—not OGHS—is responsible for effectuating any forward-looking relief Plaintiff seeks. Simply put, OGHS is not a necessary party because in Mississippi, school boards set policy, not individual schools. Miss. Code Ann. §§ 37-7-301(l), 37-9-69. The claims against OGHS should be dismissed.

D.    <u>Claims Against John Does 1-10</u>

Plaintiff's Complaint [1] also includes claims against John Does 1-10. Compl. [1] at 1. On August 21, 2025, the Court entered an Order [19] to Show Cause why her claims against these fictitious Defendants should not be dismissed. *See* Ord. [19]. Plaintiff argues that good cause exists not to dismiss these Defendants, Resp. [20] at 2, and requests that the Court: (1) decline to dismiss the John Doe

Defendants because she "is actively prosecuting this case" and pursuing the identity of those defendants; (2) permit Plaintiff to move for leave to amend to "name and join the identified individuals within 14 days after Defendants serve written responses" to Plaintiff's interrogatories, or "by October 31, 2025, whichever is later"; or (3) dismiss the fictitious Defendants without prejudice with "leave to add the identified individuals by the same timeline set out herein above," *id.* at 2-3.

This Court has authority under Federal Rule of Civil Procedure 41(b), as well as inherent authority, to dismiss "any claim" sua sponte for failure to prosecute. Fed. R. Civ. P. 41(b); *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988). This is necessary to prevent "undue delays in the disposition of pending cases and to avoid congestion in the calendars of District Courts." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962). "[I]f the plaintiff fails to name the defendant after a reasonable period of time, the claim is subject to dismissal for failure to prosecute." *Hittle v. City of Garland*, 1 F.3d 1236, 1236 (5th Cir. 1993) (per curiam).

Plaintiff has not sought to amend her Complaint [1] and the deadline for seeking leave to amend expired more than two months ago, on August 20, 2025. *See* Case Management Ord. [17] at 4. Nor has Plaintiff identified any of the individual John Doe Defendants or shown good cause for the Court to depart from the deadline in its Case Management Order [17]. *See* Fed. R. Civ. P. 16(b)(4). As such, the Court finds that Plaintiff's claims against Defendants John Doe 1-10 should be dismissed without prejudice.

## III.  <u>CONCLUSION</u>

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Oak Grove High School and Lamar County School District Board of Trustees' Motion [9] for Judgment on the Pleadings is **GRANTED**, and Plaintiff Kati Marie Mayer's claims against Defendants Oak Grove High School and Lamar County School District Board of Trustees are **DISMISSED WITHOUT PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Kati Marie Mayer's claims against Defendants John Doe 1-10 are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 4th day of November, 2025.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE